NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0292n.06
Filed: April 20, 2009

No. 07-3633

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JIN JU ZHAO, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF ORDER OF BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| United States Attorney General, | ) | |
| | ) | MEMORANDUM OPINION |
| Respondent. | ) | |

BEFORE: MOORE and McKEAGUE, Circuit Judges; and FORESTER, District Judge.*

PER CURIAM. This case presents a petition for review of a decision of the Board of Immigration Appeals denying petitioner's applications for relief in the form of political asylum and withholding of removal. Because we find the decision supported by substantial evidence and cannot hold that the evidence compels a contrary conclusion, we deny the petition.

Petitioner Jin Ju Zhao is a citizen of the People's Republic of China. She was born on April 18, 1968. She arrived in the United States on or about May 10, 2000. Eight days later she was charged with being subject to removal because she was not in possession of a valid passport and because she willfully misrepresented her identity when she applied for admission to the United

No. 07-3633
*Zhao v. Holder*

*Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

States. Zhao conceded removability but applied for asylum, withholding of removal, and relief under the Convention Against Torture on the ground that she had been subjected to involuntary sterilization in China.

According to Zhao's testimony in the evidentiary hearing before the Immigration Judge in August and November 2005, she was married in 1988. She testified that after she gave birth to her second child in July 1990, she was forced by the government family planning authorities to undergo sterilization. The Immigration Judge correctly recognized that involuntary sterilization represented potentially sufficient grounds for political asylum protection and for withholding of removal. *See Shan Sheng Zhao v. Mukasey*, 553 F.3d 436, 442-43 (6th Cir. 2009). The Immigration Judge further found that Zhao had undergone birth control sterilization (by tubal ligation), but concluded she had failed to demonstrate both that this procedure was performed by the government family planning authorities and that it was performed involuntarily. In reaching this conclusion, the Immigration Judge discredited Zhao's testimony because of numerous inconsistencies in the evidence presented.

The Board of Immigration Appeals affirmed the Immigration Judge's decision without separate opinion. Zhao now petitions the court under 8 U.S.C. § 1252(a) for review of the Board's denial of her applications for relief. Zhao contends the Immigration Judge's adverse credibility determination is flawed because it is based on immaterial inconsistencies and because she was denied fair opportunity to explain the inconsistencies.

No. 07-3633
*Zhao v. Holder*

Because the Board adopted the Immigration Judge's reasoning, we review the Immigration Judge's decision directly. *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007). Factual findings, such as credibility determinations, must be upheld as long as they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Zhao*, 553 F.3d at 443-44. The Immigration Judge's fact findings are "conclusive" unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 443 (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). The Immigration Judge is obliged, however, to support any adverse credibility determination with specific reasons. *Koulibaly*, 541 F.3d at 620. An adverse credibility determination cannot be based on an irrelevant inconsistency, but must be based on issues that go to the heart of the claim. *Id.*; *see also Ndrecaj v. Mukasey*, 522 F.3d 667, 672-73 (6th Cir. 2008).[1]

In the twenty-five page transcript of his oral decision, the Immigration Judge detailed the reasons for his determination that the evidence supporting Zhao's claim of forced sterilization was not credible. He specifically noted:

— discrepancies in Zhao's husband's testimony (concerning, for example, when and how many agents of the family planning authorities came to take Zhao to the hospital), as well as his questionable attempts to explain them;

---

[1]Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), credibility determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim," but this standard applies only to applications filed on or after May 11, 2005. *Koulibaly*, 541 F.3d at 620 n. 2. Petitioner Zhao's application was filed before that date.

- 3 -

— the husband's failure to even mention his wife's sterilization in his own original application for asylum (even though his application, too, was based on opposition to China's family planning policies);

— petitioner's evasive responses to questions regarding the origins of her "copy" of the sterilization certificate (which does not disclose whether the procedure was voluntary or involuntary);

— discrepancies in the evidence concerning the aunt (or aunts?) with whom petitioner hid during the later stages of her second pregnancy; and

— the "contrived" testimony of a witness who claimed with certainty to have visited Zhao at her home (after the tubal ligation procedure) on a date certain that could not have been the actual date.

The "bottom line," observed the Immigration Judge, was that petitioner's testimony was inconsistent with her husband's testimony, inconsistent with her corroborative witnesses' testimony, and inconsistent with her corroborative documents. He concluded that petitioner had "failed miserably" to carry her burden of proving that her sterilization was involuntary.

On review of the record, we acknowledge that some of the inconsistencies identified by the Immigration Judge are more significant than others. Some do not relate to issues going to the heart of petitioner's claim. Some of the inconsistencies may be explained simply by the fallibility of human memory concerning events that occurred almost twenty years ago. Yet, viewing the record as a whole, and considering the cumulative effect of the noted discrepancies, as well as the Immigration Judge's advantage in personally evaluating the demeanor and credibility of the

witnesses who appeared before him, we cannot conclude that he clearly erred in his assessment. Petitioner has failed to identify record evidence so refuting the Immigration Judge's findings as to demonstrate that a reasonable adjudicator would have been *compelled* to reach a contrary conclusion.

Petitioner maintains that the Immigration Judge did not afford her a fair opportunity to explain the identified inconsistencies. Citing *Ming Shi Xue v. Board of Immigration Appeals*, 439 F.3d 111, 125 (2d Cir. 2006), she contends the Immigration Judge erred by resting his adverse credibility determination on "non-dramatic" incongruities without first identifying them and giving her the chance to reconcile them. We are not persuaded.

We note that the prophylactic rule adopted by the Second Circuit in *Ming Shi Xue*—requiring an Immigration Judge to give notice of putative contradictions that are not self-evident before he or she may rely on them—has not been adopted in any other circuit. *See e.g.*, *Sankoh v. Mukasey*, 539 F.3d 456, 469-70 (7th Cir. 2008). Nor do we have occasion to do so in this case.

On the one hand, the rule is not inconsistent with our requirement that credibility determinations not be based on irrelevant inconsistencies. On the other hand, the rule permits reliance on what could otherwise be considered irrelevant inconsistencies *if* the Immigration Judge had given the applicant prior notice. Inasmuch as the Immigration Judge did not explicitly give petitioner prior notice of his intent to rely on any non-dramatic or irrelevant inconsistencies, he could not, per the rule of *Ming Shi Xue*, rely on them—which places the Immigration Judge in substantially the same place as our general prohibition against reliance on irrelevant inconsistencies.

As explained above, although the Immigration Judge did identify some inconsistencies of questionable significance in explaining his credibility determination, he also relied on other

inconsistencies that go to the heart of petitioner's claim. Viewing the record as a whole, we cannot hold that the self-evident *relevant* consistencies relied on are clearly insufficient to support the Immigration Judge's adverse credibility determination. Hence, the Immigration Judge's failure to give petitioner explicit prior notice of all the inconsistences he found significant did not result in any prejudice to petitioner. It therefore follows that even if the Second Circuit's prophylactic rule were applicable, its enforcement would not affect the outcome in this case.

Moreover, the record shows that the Immigration Judge did not simply play a "game of 'gotcha,'" in critically evaluating the evidence. *See Sankoh*, 539 F.3d at 470. Rather, he actively involved himself in questioning witnesses and trying to understand their testimony. He gave petitioner and her husband fair opportunity to explain the most relevant discrepancies in the record evidence. Despite this fair opportunity, the Immigration Judge held that petitioner had not carried her burden.

On due consideration, we conclude similarly that petitioner has not identified any overlooked or misinterpreted record evidence or presented any meritorious argument demonstrating that the Immigration Judge clearly erred in his evaluation of the record. Because we cannot conclude the record compels a conclusion contrary to that reached by the Immigration Judge, we have no choice but to uphold the Board's final decision. Accordingly, the petition for review is **DENIED**.